Henry Phipps Estates, Respondent, *v.* Tong Phong et al., Appellants.

**Landlord and tenant — action for rent against tenants alleged to have held over after their lease had expired without consent of their landlord.**

A verdict having been recovered against the defendants on the ground that they were tenants holding over without the consent of their landlord, after consideration of the evidence, *held*, that it did not justify a verdict on such ground.

Reported below, 154 App. Div. 889.

(Argued February 3, 1915; decided February 25, 1915. Re-argued April 22, 1915; decided May 14, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1912, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court except as to one issue.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Cravath White* for appellants. The appellants were not trespassers during the period from September ninth to September thirtieth. (*Luger* v. *Goerke,* 18 App. Div. 291.) The rule of law invoked by the respondent by pleading a wrongful holding over involves no element of mutuality; the action of the landlord in imposing a new term is by way of penalty for a trespass; and the test of the landlord's right to impose a new term is the existence of the alternate right of eviction. (*Schuyler* v. *Smith,* 51 N. Y. 309; *Kennedy* v. *City of New York,* 196 N. Y. 19; *Herter* v. *Mullen,* 159 N. Y. 28; *Luger* v. *Goerke,* 18 App. Div. 291.) The respondent having based its cause of action upon the allegation of wrongful con-

tinuation of possession and the case having been tried upon that theory, the respondent is bound by it and the judgment cannot now be sustained upon any other theory. (*Cole* v. *Sanford,* 77 Hun, 198; *Salisbury* v. *Howe,* 87 N. Y. 128; *Kennedy* v. *City of New York,* 196 N. Y. 19.)

*George S. Ludlow* for respondent. The appellants were trespassers during the period from September ninth to September thirtieth. (*Schuyler* v. *Smith,* 51 N. Y. 309; *Haynes* v. *Aldrich,* 133 N. Y. 287; Chaplin on Landl. & Ten. 258; *Smith* v. *Allt,* 7 Daly, 492; *Kennedy* v. *City of New York,* 196 N. Y. 19; *Cole* v. *Sanford,* 77 Hun, 198; *Chase* v. *S. A. R. R. Co.,* 97 N. Y. 384; *Brooklyn D. & T. Co.* v. *Bahrenburg,* 135 App. Div. 799; *Clark* v. *Howland,* 85 N. Y. 204.)

HISCOCK, J.   This action was brought and a judgment recovered on the theory that the appellants without consent of their landlord held over as tenants of certain premises after their written lease thereof had expired. The facts upon which this result has been predicated are substantially as follows:

Respondent's grantor made a written lease of certain premises in New York city for mercantile purposes to the appellants who were copartners. Said lease by its primary terms was for a period of five years ending April 30, 1913, but it contained the provision that at any time after October 21, 1908, either party might cancel the same by giving six months' notice of an election to exercise such option. The appellants on March 9, 1910, gave due notice of their election to exercise such option and terminate the lease on September 9, 1910. After this notice had been given and before the date of termination had arrived negotiations were opened between the parties for an extension or renewal of the lease for a period beyond the date fixed by such notice for its termination.

These negotiations were carried on by correspondence which it will be necessary to quote or summarize.

By letter dated July 28, 1910, the appellants said to the respondent: "We would thank you to let us know whether it would be satisfactory to you for us to remain here (in the demised premises) * * * at the same rental per month as we are now paying until Feb. 1st, 1911. Kindly let us know by the 1st of August if this is satisfactory, otherwise we will have to make other arrangements." To this the respondent replied: "We will be glad to retain you as tenants to February 1st, 1911, at the same rental per month as you are now paying,' provided you will remove the large sign at present placed over your firm sign in front of the building." To this, under date of August 2d, the appellants replied: "We beg to advise you that negotiations are pending for a store at another address and we cannot give you our decision to remain at this address until the 10th or 12th. * * * In the event of our remaining will be pleased to arrange details with you to make such disposition of the sign in question, as we hope, will be satisfactory to your other tenants." In response to this on the next day the respondent wrote: "In your letter * * * you asked for a renewal until February first, 1911, provided that we would give you an answer before August first. This we did and consider that the lease has been renewed." To this the appellants on September first replied advising respondent "that on October 1st, we will vacate the premises now occupied by us * * * and we would thank you very much if you can give us a lower rate of rent for this extra month. We will remove the large sign in front of the store at once as requested by you some time ago." To this the respondent replied, referring to its former letter of August 3d, that it understood that the appellants had taken an additional lease from it until February 1st next, and "Under the circumstances we consider we have a lease in force with you until Feb-

ruary first, 1911." To this the appellants responded under date of September 7th that "If you (the respondent) will look over our correspondence again, you will find that we have never, in any manner, given you a renewal of our lease until the first of next February, and it is evident that you have placed a misconstruction upon that part of our correspondence. Herewith, we beg to hand you check for our September rent which we would thank you to acknowledge." To this the respondent answered, referring to the former correspondence, and stating: " This certainly constituted a lease and we will look to you for the rental until February first, 1911." No response to this letter was made by the appellants and on the same date a receipt was made out by the respondent and presumably delivered to the appellants " For rent, month ending September 30, 1910," of the premises, at the unquestioned figure of $375. The appellants vacated at the end of the month and on September 30th the respondent wrote to the appellants a letter to the effect that there had been handed to it that day the keys of the premises and that " These we have accepted with the understanding that by doing so we relinquish none of our rights under a certain lease which you had for the premises in question; and any renewal of said lease." Subsequently the respondent in accordance with suggestions which had been made in the foregoing correspondence undertook in behalf of the appellants and on their account to lease the premises which they had vacated. It succeeded in so doing but under an arrangement by which the tenant who took possession soon after the vacation by appellants did not pay rent until after February 1st, 1911, and the only question submitted to the jury was whether the respondent made reasonable efforts under its undertaking in behalf of appellants to procure a tenant for the premises and which question was decided by the jury in favor of the respondent.

On this evidence, as was stated at the beginning, the

respondent obtained a judgment on the ground that the appellants held the possession of the demised premises for a month after their lease had expired without the consent of the landlord, and that, therefore, under familiar principles the latter was entitled to treat them as having taken the premises for another year under the terms of the original lease. The recovery was not for a full year's rent for the reason that the appellants had paid for one month of the extra period and that the new tenants who were procured by the respondent paid rent from and after February 1, 1911.

We are quite at a loss to find any support for the assertion that the appellants became liable for another year's rent as tenants holding over because they continued in possession after September 8th without the consent of the landlord. That seems to be the one thing which they did not do. The correspondence between the parties followed by the payment and acceptance of rent for the additional month during which they continued to occupy the premises makes it perfectly plain that the appellants continued in possession after the date originally fixed for the termination of the lease by and with the consent of the landlord, the only question being whether the arrangement under which they thus continued in possession was one which made them liable for rent until February 1st or only for the month of September. We see no real opportunity for debate on this question and do not think we can make any clearer than does the correspondence which we have quoted the proposition that an arrangement existed between the parties for extending the lease after September 8th; and that, therefore, there was not and could not be a holding over without the consent of the landlord.

More difficulty arises in determining which arrangement governed the extension of the original lease — that urged by the respondent or by the appellants. A careful consideration of this question, however, leads us to the

conclusion that the appellants must be regarded as having accepted the extended term under the lease asserted by the respondent.

The latter at all times insisted that the former had made a contract with it extending the lease until February 1st. The only condition imposed by the respondent in its original letter consenting to the extension until February 1st, and which related to the removal of the sign, was subsequently complied with by the appellants. Even though the respondent may have been wrong as matter of law in its assumption that a lease until February 1st had been made, it had the right to insist upon this version as a condition of allowing the appellants to continue in possession, and if the latter continued their occupation under the correspondence and respondent's construction thereof they undoubtedly became tenants for the period named. They had a choice between two courses. They could insist that no extension had been made and vacate the premises and take their chances on the successful assertion by respondent of its claim, or they could continue their possession in acquiescence in and acceptance of respondent's contention that a lease had been made for the period expiring February 1st. They did not vacate and they insist that they were not tenants holding over, and, therefore, they must have taken the course of acquiescence in respondent's claim, unless they have successfully escaped from that position by reason of the check which they sent in payment of the rent for September. We shall assume for the purposes of this discussion that notwithstanding respondent's claim as to the extension, the appellants might have sent a check for the additional month of September accompanied by such a repudiation of that claim and accompanied by such notice that the check was sent only on appellants' theory of an extension for a month that the respondent's acceptance of the check would have amounted to an assent by it to the appellants' version. But in order to have

accomplished this result, if it could be thus accomplished, the appellants must have assumed such an unequivocal attitude in respect of their payment that acceptance of it could only have one effect and result. It seems to us that they did not do this; that they did not reject respondent's claim and compel the latter to accept their's in place of it when it retained the check. The letter which inclosed the latter somewhat mildly reiterated their position in respect of the negotiations by asserting that the respondent " had placed a misconstruction on this part of our correspondence," and then simply stated that they inclosed a check " for September rent." They were obliged to pay rent for September on any theory and, therefore, we do not think that the inclosure by them and acceptance by the respondent of the check under the circumstances forced the latter into the attitude of receiving it on the appellants' theory.

The appellants themselves on this appeal do not seem to dispute strenuously that they made a lease until February 1st. In fact, as we remember it, their counsel on the argument stated that that conclusion would not be objectionable to him. Their great contention seems to be the somewhat sentimental one that they have been unjustly held liable as trespassers and by reason of a tortious possession of the premises after their lease had expired. In this contention as we have indicated they are correct. They were not tenants holding over without the consent of the landlord but were in possession by and with its consent.

The question still remains what shall be our course in respect of the judgment which has been secured. While the respondent's theory of the action and its complaint and the proceedings on the trial have all been governed by an erroneous conception of the relations of the parties, by some fortunate accident it has happened that the verdict was for the right amount. The appellants insist that justice can only be afforded to them by reversing the

judgment which is founded on error and granting a new trial whereon there would be opportunity for a trial of the issues on a correct theory. Of course it is true that if the appellants had suffered actual injury as the result of the errors which have been committed it would be our duty to give them a new trial, but as we have pointed out a verdict on such a new trial conducted on proper lines would be for precisely the same amount as the one which has now been rendered against them.

Neither do we see any opportunity for any such change in the evidence as might lead to any different result. So far as appears, the rights of the parties have been fixed by correspondence and there is no suggestion of any point in their negotiations where verbal communications occurred which might change the result. Under these circumstances it seems to us that it would simply result in useless delay and expense to grant a new trial. The appellants, however, should not be burdened with any costs on account of this appeal if the judgment is affirmed, for if it should be reversed and the respondent compelled to amend its complaint in accordance with our views the trial court would doubtless protect appellants on such amendment by the imposition of proper terms.

Our views, therefore, are that the judgment should be reversed and a new trial granted, unless the respondent waives its right to costs as upon an affirmance, and in which case the judgment should be affirmed, without costs.

CHASE, CUDDEBACK, HOGAN and SEABURY, JJ., concur; WILLARD BARTLETT, Ch. J., votes for unconditional affirmance, with costs; MILLER, J., not sitting.

Judgment accordingly.

Upon re-argument: Judgment reversed, new trial granted, costs to abide event and remittitur amended accordingly; no opinion.

Concur: WERNER, HISCOCK, CUDDEBACK, MILLER, CARDOZO and SEABURY, JJ. Not sitting: COLLIN, J.